GLADNEY, Judge.
This appeal is from a judgment granting a permanent injunction to Chicago Mill & Lumber Company and Ayer Timber Company, Inc., enjoining George N. Lewis from interfering with the cutting and removal of timber from certain land in Madison Parish acquired by Lewis from Ayer Timber Company, Inc. through deed dated November 1, 1940, containing timber reservation provisions.
This court has had before it phases of this case on two previous occasions. See 66 So.2d 624 and 68 So.2d 913. On the latter occasion consideration was given to the record as submitted after a hearing upon the rule nisi for the issuance of a writ of preliminary injunction, and upon the review, this court examined the evidence adduced for the purpose of justifying the issuance of the writ. For reasons given in our opinion the cause was remanded to the trial court for further proceedings and with direction to ascertain the merchantable timber in existence on the Lewis land as of November 1, 1940. Following this ruling, further proceedings were had in the trial court which resulted in the issuance of a preliminary writ of injunction, and finally, in the. granting of a permanent injunction.
In what should have been the usual expeditious trial of an injunction suit, more than eighteen months have already elapsed without the rendition of a final judgment. Two applications for writs herein have been acted upon by the Supreme Court of Louisiana and refused, and as above pointed out, this is the third time the case has been before this court. Pleadings, testimony, exhibits and remarks of counsel have made up seven volumes of which the greater part of four volumes contains evidence presented on the trial had for the issuance, vel non, of a permanent injunction.
Notwithstanding the massiveness of the record, the issues from the beginning, in our opinion, have been relatively simple. The deed from Ayer Timber Company, *627 Inc. to George N. Lewis, reserved all the merchantable timber growing on the land sold to him. The sale was made subject to a written contract or agreement between Ayer Timber Company, Inc. and Chicago Mill & Lumber Company, and any further amendments to said contract. The agreements between the two corporations contained a grant of authority from the owner of a vast tract of timber to a mill owner to cut its timber and settle for the amount so cut upon the payment of specified prices. The agreement, as amended, and as may be further amended, is dated Ooctober 28, 1918, and referred to as the basic contract. The contract did not limit the size of timber which could be removed and timber under certain saw log sizes could be removed for seventy-five cents per thousand, and some, as therein specified, without payment therefor. The basic contract was in force and effect when Lewis purchased the land from Ayer Timber Company, Inc. and we presume it is still in existence.
In brief and argument error is assigned to the judgment appealed from in that: defendant was not accorded a trial upon the merits of his case; erroneous rulings were made as to the admission and exclusion of certain evidence, in refusing to grant an order for inspection of certain records in the possession of plaintiffs, and in denying a motion for continuance; and the court erred in its determination of “merchantable timber”.
We have carefully reviewed the record only to find upon the trial for permanent injunction defendant was not denied presentation of any valid evidence tendered by him upon triable issues. Doubtlessly, the complaint is directed at rulings under the second error assigned to the judgment, and hereinafter discussed. The record of the final trial fills four volumes and it discloses defendant’s counsel was successful in placing in the record all admissible evidence tendered. There is no merit in the contention of appellant he was not allowed to try his case on its merits.
The next assignment of error charges erroneous rulings as to the admissibility of certain evidence. The evidence referred to principally concerns releases of timber upon lands other than those of the defendant. This evidence was properly excluded by the trial court. We had occasion to pass upon the same question when this case was before us on the last occasion. See 68 So.2d 913, 917. As we appreciate counsel’s position, the refusal of the court to admit releases of other land was prejudicial to her cause. We do not understand that on the appeal she complains of substantial prejudice from rulings pertaining to other evidence. We find no error either in our ruling, heretofore given, or that of our brother on the district bench, the effect of which was to exclude evidence of releases unrelated to the Lewis land. LSA-C.C. art. 2276.
Error is assigned to the refusal of the judge a quo to sign an order permitting the defendant and his counsel to inspect, copy and photograph certain records in the office of the Chicago Mill & Lumber Company. The step was taken under the new Louisiana statute on Depositions and Discovery, Acts 1952, No. 202, as presently incorporated in Part 3, of Title 13 of the Revised Statutes of 1950, embracing Sections 3741 and 3794. It was represented in the motion that the evidence sought to be obtained would show: there was no merchantable timber on the Lewis tract in 1940; Ayer Timber Company, Inc. had no desire to cut timber on the land sold to Lewis; that neither Ayer Timber Company, Inc. nor the Chicago Mill & Lumber Company owned any timber on the Lewis tract; and releases on many tracts of land after the timber thereon was removed, were given to Ayer Timber Company, Inc. by the Chicago Mill & Lumber Company, thus indicating a pattern of conduct which should govern the Lewis land. Counsel for appellant has not pointed out specifically how she has been prejudiced by the ruling. The record discloses without room for doubt there was some merchantable timber on the Lewis tract when on. November 1, 1940, the reserve .clauses were *628 written into the Lewis deed. Correspondence between the Ayer Timber Company, Inc. and Lewis clearly indicates that the Chicago Mill & Lumber Company as late as 1953 was insisting upon its right to cut the timber on the Lewis tract. The Ayer Timber Company, Inc. wrote Lewis that it could not release the timber until agreeable with the Chicago Mill & Lumber Company. Appellant’s contention that neither of plaintiffs owned the timber on the Lewis tract is refuted by the deed from Ayer Timber Company, Inc. to Lewis and upon which rests any claim of title by Lewis to the timber. The final clause of entitlement to see any and all releases of timber lands from the basic contract by Chicago Mill & Lumber Company concerns evidence irrelevant and inadmissible, as was pointed out in our previous decision. We said, 68 So.2d 913-917:
“ * * * parol evidence was adduced to show that after the timber was cut the vendor in deeds containing similar reserve clauses recognized the timber as belonging to the landowner. The evidence, we think, was improperly admitted. LSA-C.C. art. 2276.”
Substantially all of the evidence sought to be obtained by the motion for discovery with the exception of that shown to be irrelevant, was either supplied through other testimony or records filed in evidence on the trial of the case. The evidence contemplated by the discovery move, if produced, would have been merely cumulative. Furthermore, the request as presented to the court was too general and is subject to objection under LSA-R.S. 13:3762. In discussing limitations on unwarranted attempts of discovery in “The New Louisiana Statute on Deposition and Discovery”, by Leon D. Hubert, Jr., La.Law Review, Volume XIII, pp. 173, 192 and 193, the author referring to LSA-R.S. 13:3762, relating to orders for the protection of parties and deponents, said:
“Here is a complete arsenal of defensive weapons against the abuses of the ‘fishing expedition’. In order to stress the importance of this protective device it is perhaps desirable to list the various defensive devices made available by this section. Upon notice and for good cause, a party may obtain an order:
“(1) Completely terminating the taking of the deposition;
“(2) Changing the time or place for the taking of the deposition;
“(3) Changing the type of deposition from oral examination to written interrogatories;
“(4) Restricting the matters which shall be inquired into;
“(5) Limiting the scope of the examination ;
“(6) Requiring that the examination shall be held privately;
“(7) Requiring that the deposition shall be sealed and opened only by order of court;
“(8) Protecting secret processes, developments, or research;
“(9) Requiring that the parties simultaneously file documents in sealed envelopes;
“(10) Affording protection against annoyance, embarrassment, oppression, or undue expense.
“It is submitted that with all these available devices, a party can adequately protect himself against the abuses of the ‘fishing expedition’.”
We find, in refusing to sign the order, the trial judge, who is under the discovery act vested with a certain amount of discretion, did not abuse the power vested in him, and furthermore, counsel for appellant has failed to show resulting prejudice from the ruling of which complained.
One of appellant’s complaints is that the district court refused to grant his motion for a continuance of the trial set *629 for April 23, 1954. We cannot, however, give consideration to this postulation, nor consider it an issue before us, because we find it has already been disposed of by the Supreme Court of Louisiana. Following a denial of the motion for a continuance in the trial court, counsel for appellant made application to the Supreme Court for review of the ruling. Writs were refused, the court finding that the “application discloses no abuse of the discretion with which the trial judge is vested.”
In opposition to plaintiff’s right to remove from defendants’ land the timber found to be merchantable on November 1, 1940, counsel argues: that all the merchantable timber was' cut during the years 1936 and 1937; that the Lewis land was released under the basic contract; that trees now standing were not merchantable in 1918, hence were never affected by the basic contract; and the term of the basic contract expired after the sale to Lewis. None of the above contentions finds substantial supporting evidence in the record. They simply are not proven. On the contrary, the reverse is true. Many witnesses testified there was merchantable timber on the Lewis land in 1940. The 1936-1937 cutting was only for the large mill at Tallulah. The testimony of R. N. Ware, Jr., J. D. Hal-bach, B. M. Hennington, Harold Scott, J. B. Massey, J. T. Singer and S. C. Alexander banishes any doubt that there was on the Lewis tract in 1940 timber which was merchantable and being cut into lumber by small circular mills for delivery to the Chicago Mill & Lumber Company mill at Tal-lulah from logs measuring eight inches and up at the narrow end of the log. Records of the Tallulah mill reflect the Chicago Mill & Lumber Company during the year 1940 accounted to Ayer Timber Company, Inc. for over one million feet of such small timber. But why, may we ask, would Ayer Timber Company, Inc., make any reservation of merchantable timber on the Lewis tract if none existed? No matter in what quantity saleable timber existed it belonged to the reserver under its deed to Lewis. Nor is it clear how counsel can question the right of the parties to the basic contract to extend its provisions at their pleasure. It was and is of no concern to Lewis. Lewis is entitled only to retain such timber as was not merchantable on November 1, 1940, and further, since his deed fixed no time for removal of the merchantable timber pursuant to his request, he is entitled to have a time limit fixed by the court. Through the testimony of Lewis, Bill McDonald, Ernest Hebert, Governor Crick, J. T. Singer and Barnett Wallace, defendant sought to establish there was no merchantable timber on the Lewis tract in 1940. It is evident from an examination of their testimony these witnesses were thinking of the larger saw logs which were being taken to the Tallulah Mill and not logs utilized by the small circular mills which cut down to eight inches. Several of.these witnesses readily admitted the smaller logs were merchantable.
We turn our attention to the final argument of defendant which collaterally attacks the timber reserve clause in the act of sale of November 1, 1940. It is contended the clause in the latter act is not authorized under the prior agreement between the parties dated October 14, 1936, and further, if the clause can be considered valid, there was no consideration to Lewis for the inserted provision. We find in the record no facts which support these arguments. In both contracts there is clearly shown the intent of Ayer Timber Company, Inc. to preserve from interference by Lewis its right to receive all payments due it for timber that could be taken from the Lewis land under the basic contract and as expressly stated in the contract of October 14, 1936, under “any amendment, assignment, or alteration thereof which may now be in force or which may subsequently be executed between the parties thereto or any of them.” Thus, any rights which Lewis had were subject to any future amendments to the basic contract and the reserve clause in the deed was a proper provision to insure to the Ayer Timber Company, Inc. all payments for timber taken from the land by Chicago Mill & Lumber Company under the basic contract or from anyone else. Furthermore, we think that defendant mistakes his remedy by leveling an indirect at *630 tack upon the deed which was voluntarily signed by Lewis. Surely, if there was error affecting the intent of the parties as to the subject matter of the contract, Lewis should have complained at the time he was tendered the deed and if the vendor refused to make a proper adjustment his remedy lay in proper legal procedure to procure a reformation of the instrument.
As a result of studies made to determine the average growth of the larger trees on the Lewis tract since 1940, experts for plaintiffs and defendant testified as to their calculations. Curry Patton and L. C. White testified for plaintiffs and fixed the average tree grown during twelve growing seasons as 2.6 inches. Keith Cranston and John Nibert, called by defendant, found the average growth during the same period to be 3.1 inches. All of these witnesses were well qualified and experienced foresters. The district court averaged the two findings to get 2.9 inches, which we think is proper.
The evidence, we think, conclusively shows plaintiffs are entitled to remove all timber from the Lewis land that can be determined as having a diameter of eight inches at the narrow end of the log as of November 1, 1940. In making the determination an average annual tree growth of one-twelfth of 2.9 inches should be used.
It follows from our findings set out above the judgment with but slight modification should be affirmed.
It is ordered, adjudged and decreed that there be judgment in favor of Ayer Timber Company, Inc. and Chicago Mill & Lumber Company, enjoining George N. Lewis from interfering with Chicago Mill & Lumber Company cutting and removing timber from:
“The Southeast quarter (SE%) of Section Thirteen (13), in Township Fifteen (15) North, Range Nine (9) East; the Southeast quarter (SE14) of the Northeast quarter (NEJ4), of Section Twenty-Four (24) in Township Fifteen (15) North, Range Nine (9) East; the South half (S^) of the South half (SJ4) of the Northwest quarter (NWj4) of Section Eighteen (18) in Township Fifteen (15) North,. Range Ten (10) East; and the Southwest quarter (SW^,) of the Northwest quarter (NWJ4) of Section Nineteen (19), in Township Fifteen (15) North, Range Ten (10) East, all situated in Madison Parish, Louisiana, which land was purchased by George N. Lewis from Ayer Timber Company, Inc.”
which was eight inches or more in diameter when measured at the narrow end of the log as of November 1, 1940. In making the determination an average annual tree growth of one-twelfth of 2.9 inches shall be used.
It is further ordered that the Chicago Mill & Lumber Company be allowed for the removal of said timber, one year from the date this judgment shall become final.
It is further ordered that defendant pay all costs of this suit, including costs of appeal.